JP:RTP

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

M11-1167

- - - - - - - - - - - - - - - - -X

UNITED STATES OF AMERICA

    -against-

JING ZHAO,

           Defendant.

- - - - - - - - - - - - - - - - -X

AFFIDAVIT IN SUPPORT OF REMOVAL TO THE DISTRICT OF MINNESOTA

(Fed. R. Crim. P. 5(c))

EASTERN DISTRICT OF NEW YORK, SS:

      MICHAEL A. DIAZ, being duly sworn, deposes and says that he is Special Agent with the Department of Homeland Security, Homeland Security Investigations ("HSI"), duly appointed according to law and acting as such.

      Upon information and belief, on or about April 15, 2008, an arrest warrant was issued by the United States District Court for the District of Minnesota, commanding the arrest of the defendant JING ZHAO, for conspiracy to commit marriage fraud, in violation of 8 U.S.C. § 1325(c), and aiding and abetting marriage fraud, in violation of 8 U.S.C. § 1325(c).

      The source of your deponent's information and the grounds for his belief are as follows:

      1.  On or about April 15, 2008, an arrest warrant was issued by the United States District Court for the District of Minnesota, commanding the arrest of the defendant JING ZHAO, for conspiracy to commit marriage fraud, in violation of 18 U.S.C. § 1325(c), and aiding and abetting marriage fraud, in violation of 18 U.S.C. § 1325(c). A copy of the arrest warrant and

superseding indictment are attached hereto as Exhibit A.

2. On or about November 29, 2011, the defendant JING ZHAO arrived at United States Citizenship and Immigration Services asylum office in Rosedale, New York for an asylum interview. In her asylum application dated October 7, 2011, which was forwarded by HSI agents in Minnesota to HSI agents in New York, the defendant JING ZHAO stated that she came to the United States from China in 2007, and that she was married in a pre-arranged marriage in Minnesota just three days after arriving in the United States.

3. The defendant also presented a passport issued by China in the name JING ZHAO, identified herself as JING ZHAO, and verified that the date of birth on the passport was correct. Further, the defendant's physical appearance matches the photograph on the Chinese passport and the photograph that she submitted with her asylum application.

4. It is the desire of the United States Attorney for the District of Minnesota that the defendant JING ZHAO be removed to that district for prosecution.

WHEREFORE, it is respectfully requested that the defendant JING ZHAO be removed to the District of Minnesota so that she may be dealt with according to law.

_____
Michael A. Diaz
Special Agent
HSI

Sworn to before me this
29th day of November, 2011

3

SECRET

# UNITED STATES DISTRICT COURT

## District of Minnesota

UNITED STATES OF AMERICA

## WARRANT FOR ARREST

V.

CASE NUMBER: **CR 08-118(10) PAM/AJB**

Jing Zhao(10)

To: The United States Marshal
and any Authorized United States Officer

YOU ARE HEREBY COMMANDED to arrest: Jing Zhao

and bring him or her forthwith to the nearest Magistrate Judge to answer an Indictment charging him or her with:
Count 1 - Conspiracy to Commit Marriage Fraud, in violation of 18:371
Count 6 - Aiding and Abetting Marriage Fraud, 8:1325(c) and 18(2).

Ordered by: Susan R. Nelson, United States District Court Magistrate Judge.

_____  April 15, 2008 at Minneapolis, MN
(By)  Kim Krulas, Deputy Clerk

**RETURN**

This warrant was received and executed with the arrest of the above-named defendant at _____

Date Received: _____  Date of Arrest: _____

_____  _____
Name and Title of Arresting Officer  Signature of Arresting Officer

criminal\warrant.frm  DC Modified 5/17/07



UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
CRIMINAL NO. 08-118 (PAM/AJB)

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | **SUPERSEDING INDICTMENT** |
| | ) | |
| Plaintiff, | ) | (8 U.S.C. § 1325) |
| | ) | (18 U.S.C. § 2) |
| v. | ) | (18 U.S.C. § 371) |
| | ) | (18 U.S.C. § 1001) |
| | ) | (18 U.S.C. § 1028A) |
| 4. XIANGQUAN WANG, | ) | |
| 10. JING ZHAO, | ) | |
| 12. YING CHEN, | ) | |
| 14. XIU CHEN, | ) | |
| 16. XIAO LU, | ) | |
| 17. FEN YANG, | ) | |
| 19. MEIXIA CHEN, | ) | |
| 21. JINLAN LIU, | ) | |
| 25. CAIMIN LI, | ) | |
| 27. YULU CHEN, | ) | |
| 29. XIUYING CHEN, | ) | |
| 31. MEI HUANG, | ) | |
| 33. YANJIN LIU, | ) | |
| 35. LING HUANG, | ) | |
| 39. JIANYUN LIN, | ) | |
| 41. HUIZHU HUANG, and | ) | |
| 43. MEIYUN LIU, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

THE UNITED STATES GRAND JURY CHARGES THAT:

**STATUTORY INTRODUCTION**

1. An alien (a non-citizen of the United States) who is the fiancé of a citizen of the United States is permitted to enter the United States to marry that U.S. citizen as a "K-1" non-immigrant. A "non-immigrant" is a foreign national who is legally and temporarily in the United States for a specific purpose. To assist a foreign national to enter the United States as a fiancé, the U.S. citizen ("petitioner") must file a Form I-129F [Petition for Alien

FILED MAR 03 2010
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD
DEPUTY CLERK

MAR 03 2010
U.S. DISTRICT COURT ST. PAUL

1

<u>U.S. v. Xiangquan Wang, et al.</u>                <u>Criminal No. 08-118 (PAM/AJB)</u>

Fiancé] with U.S. Citizenship and Immigration Services ("USCIS") on behalf of the fiancé ("beneficiary"). On the I-129F, the petitioner is informed that entering into a marriage for the purpose of evading immigration law or knowingly or willfully falsifying or concealing a material act are crimes under U.S. law. Also, the petitioner certifies that all of the statements contained in the application are true and correct.

2. To obtain a fiancé visa, the petitioner is required to submit original statements or other such evidence from both parties demonstrating mutual affection and intent to marry. This commonly includes photos of the petitioner and beneficiary together, letters, cards, or emails between the two parties, phone records purporting to demonstrate frequent communication, and evidence of money transfers or gifts to one or both parties.

3. After the I-129F is approved, USCIS forwards the case file to the National Visa Center which, in turn, sends the package to the U.S. Embassy or consulate abroad having jurisdiction over the foreign national. Officials at that embassy or consulate will schedule an interview with the beneficiary. In advance of that interview, the fiancé beneficiary is required to complete Form DS-156 [Non-immigrant Visa Application] and Form DS-156K [Non-immigrant Fiancé Visa Application] and pay the required fee of $100. Among other things, these forms require that the fiancé submit evidence of a bona fide engagement to the petitioner. Form

U.S. v. Xiangquan Wang, et al.                    Criminal No. 08-118 (PAM/AJB)

DS-156K requires that the beneficiary swear under oath that all of the statements in those applications are true and correct. Further, the application alerts the beneficiary that "any willfully false or misleading statement or willful concealment of a material fact made by [him or her] . . . may subject [him or her] to criminal prosecution and/or deportation." Like the I-129F, the beneficiary commonly submits evidence in conjunction with the application that purports to demonstrate a bona fide relationship with the petitioner. The interview with State Department officials at the embassy or consulate is conducted in the beneficiary's native language.

4. After approval of the I-129F and DS-156, contingent on successful inspection at a port-of-entry, the fiancé may be admitted into the United States. Once admitted, the parties must marry within 90 days. This period of time may not be extended. If the marriage does not take place or the beneficiary marries someone other than the petitioner, the beneficiary has not complied with the terms of the visa and is, consequently, out of lawful immigration status and deportable from the United States.

5. A fiancé who intends to live and work permanently in the United States must, after marriage to the U.S. citizen, apply to become a lawful permanent resident of the United States (otherwise, the fiance/spouse must depart the United States within the 90-day admission period described above). This is done by filing Form I-

U.S. v. Xiangquan Wang, et al.                Criminal No. 08-118 (PAM/AJB)

485 [Application to Register Permanent Residence or Adjust Status] with supporting documentation to USCIS, along with the fee of $395. The form requires a certification from the applicant that all of the statements contained therein are correct. With the I-485, the petitioner must submit, among other things, a Form I-864 [Affidavit of Support] which serves to establish that the petitioner (along with a co-sponsor if necessary) makes sufficient money and agrees to financially support the beneficiary such that he or she will not become a public charge.

6. Officials at USCIS review the application and other evidence filed and forward the same to the local USCIS office of jurisdiction. USCIS adjudicators then schedule an interview with the petitioner and beneficiary, the purpose of which is to determine whether the claimed marital relationship is genuine. The parties are placed under oath and are asked a series of questions. If and when USCIS concludes that the marital relationship, the application is approved.

7. Once his or her application is approved by local USCIS officials, the new spouse is accorded "conditional" lawful permanent resident status for a period of two years. Within 90 days of the two-year anniversary of the receipt of conditional lawful permanent resident status, the husband and wife must file a Form I-751 [Petition to Remove Conditions of Residence] with the USCIS center with jurisdiction to remove the conditional status of

U.S. v. Xiangquan Wang, et al.                    Criminal No. 08-118 (PAM/AJB)

the immigrant spouse. The fee for this application is $205. If the husband and wife are no longer married, a waiver is available such that the conditional resident can apply to remove the joint filing requirement. In any circumstance, the parties or party must establish that the marriage was entered into in good faith. Most applications are adjudicated at the service center; others are forwarded to the local USCIS office for an interview. If and when the I-751 is approved, the conditions of the immigrant spouse's residency are removed, resulting in unconditional lawful permanent residency.

## FACTUAL INTRODUCTION

8. At all times referred to in this Indictment, KANEEKA CHANTHAVONG, CHEE CHENGSHUA LEE, CHUE DOU VANG, DAVID KU VANG, KAO VANG, HOUA VANG, PAO VANG, SOUA VANG, ANNIE PAFOUA XIONG, TOU KAO XIONG, TOUA XIONG, CHENG YANG, CHUE YANG, JOE YANG, LYFOUNG YANG, THOMAS YANG, and TOU KAO YANG (collectively "petitioners"), were citizens of the United States.

9. At all times referred to in this Indictment, the defendants, XIANGQUAN WANG, JING ZHAO, YING CHEN, XIU CHEN, XIAO LU, FEN YANG, MEIXIA CHEN, JINLAN LIU, CAIMIN LI, YULU CHEN, XIUYING CHEN, MEI HUANG, YANJIN LIU, LING HUANG, JIANYUN LIN, HUIZHU HUANG, and MEIYUN LIU (collectively "beneficiaries"), were citizens of China.

5

U.S. v. Xiangquan Wang, et al.                Criminal No. 08-118 (PAM/AJB)

## COUNT 1
(Conspiracy to Commit Marriage Fraud)

10. The Grand Jury realleges and incorporates paragraphs 1-9 as if set forth in full herein.

11. Beginning on a date unknown to the Grand Jury, but at least during the year 2002 and continuing through in or about November 2007, within the State and District of Minnesota and elsewhere, the defendants,

> XIANGQUAN WANG,
> JING ZHAO,
> YING CHEN,
> XIU CHEN,
> XIAO LU,
> FEN YANG,
> MEIXIA CHEN,
> JINLAN LIU,
> CAIMIN LI,
> YULU CHEN,
> XIUYING CHEN,
> MEI HUANG,
> YANJIN LIU,
> LING HUANG,
> JIANYUN LIN,
> HUIZHU HUANG, and
> MEIYUN LIU,

did knowingly combine, conspire, confederate, agree, and have a tacit understanding with each other and with others known and unknown to the Grand Jury, including but not limited to Le Guo Wu and Houa NMN Vang, to enter into marriages between Chinese citizens and citizens of the United States for the purpose of evading any provision of the United States immigration laws, all in violation of Title 8, United States Code, Section 1325(c).

6

U.S. v. Xiangquan Wang, et al.                    Criminal No. 08-118 (PAM/AJB)

### Object of the Conspiracy

12. The object of the conspiracy was to facilitate entry into the United States by the Chinese aliens, residence within the United States by the Chinese aliens, and receipt of United States immigration benefits by the Chinese aliens through the evasion of the immigration laws.

### Manner and Means of the Conspiracy

13. Defendants, acting alone at times and in close association with one another at times, and with other co-conspirators known and unknown to the Grand Jury, including but not limited to Le Guo Wu and Houa NMN Vang, sought to achieve the object of the conspiracy by the following manner and means, among others:

    a. It was part of the conspiracy that Le Guo Wu and Houa NMN Vang, and others known and unknown to the Grand Jury, would recruit petitioners to participate in the marriage fraud scheme in exchange for payment. Following recruitment, Le Guo Wu and Houa NMN Vang, and others known and unknown to the Grand Jury, would assist each petitioner throughout the marriage fraud.

    b. It was further part of the conspiracy that petitioners received up to $25,000, minus their travel expenses to and from China and other related expenses, in exchange for their participation in the marriage fraud scheme.

    c. It was further part of the conspiracy that Chinese

U.S. v. Xiangquan Wang, et al.                    Criminal No. 08-118 (PAM/AJB)

beneficiaries, individually and through friends and family, paid to participate in the marriage fraud scheme to secure fraudulent entry into and immigration status within the United States.

    d.    It was further part of the conspiracy that Form I-129F petitions would be filed with USCIS for each petitioner-beneficiary pair.

    e.    It was further part of the conspiracy that petitioners would travel to China on one or more occasions and participate in generating false and misleading evidence purportedly demonstrating mutual affection and intent to marry his or her beneficiary. Such evidence typically included staged photographs of the petitioner and beneficiary together and sham engagement celebrations. The evidence was generated to document the petitioner-beneficiary relationship to facilitate issuance to the beneficiary of a K-1 visa under fraudulent pretenses.

    f.    It was further part of the conspiracy that petitioners would travel to China on one or more occasions and participate in preparing the beneficiary for the beneficiary's K-1 visa interview at a United States Embassy or Consulate in China. The interview preparation was conducted to facilitate issuance to the beneficiary of a K-1 visa under fraudulent pretenses.

    g.    It was further part of the conspiracy that each beneficiary would attend a K-1 visa interview at a United States Embassy or Consulate in China. If the beneficiary passed the

U.S. v. Xiangquan Wang, et al.                    Criminal No. 08-118 (PAM/AJB)

interview, a K-1 visa would be issued to the beneficiary.

h.  It was further part of the conspiracy that each beneficiary would make entry into the United States using the fraudulently-obtained K-1 visa.

i.  It was further part of the conspiracy that once a beneficiary successfully made entry into the United States, the petitioner and beneficiary would often participate in a civil marriage ceremony before a judicial officer to cause issuance of a marriage license. Petitioners and beneficiaries would participate in the ceremony to perpetuate the conspiracy, namely by complying with the terms of the fraudulently-obtained K-1 visa and by gaining legal status for the sham marriage. Neither before nor after the marriage license was issued did the petitioner and beneficiary enter into a bona fide marital relationship.

j.  It was further part of the conspiracy that once a beneficiary successfully made entry into the United States, a beneficiary would seek immigration benefits, including but not limited to lawful permanent residence status, through the filing of applications for adjustment of immigration status. Such applications, including but not limited to I-485 petitions, would seek to evade the immigration laws by falsely representing, among other things, that the petitioner and beneficiary had entered into and maintained a bona fide marital relationship.

U.S. v. Xiangquan Wang, et al.　　　　　　　　　Criminal No. 08-118 (PAM/AJB)

## Overt Acts

14. In furtherance of the conspiracy and to accomplish the objects of the conspiracy, on or about the following dates, defendants, acting alone at times and in close association with one another at times, and with other co-conspirators known and unknown to the Grand Jury, including but not limited to Le Guo Wu and Houa NMN Vang, committed various overt acts within the State and District of Minnesota and elsewhere, including but not limited to the following:

　　a.　Between 2002 and November 2007, each petitioner as identified in paragraph 8 above traveled to China on at least one occasion in furtherance of the conspiracy. The purpose of such a trip or trips included, but was not limited to, generating "evidence" that could be used in support of the fraudulent visa application and/or participating in preparation sessions designed to increase the Chinese alien's chances of "passing" the visa interview conducted at a United States Consulate.

　　b.　Between 2002 and November 2007, each beneficiary as identified in paragraph 9 above secured a K-1 visa for entry into the United States in furtherance of the conspiracy.

　　c.　Between 2002 and November 2007, each beneficiary as identified in paragraph 9 made entry into the United States using the fraudulently-obtained K-1 visa in furtherance of the conspiracy.

10

U.S. v. Xiangquan Wang, et al.　　　　　　　Criminal No. 08-118 (PAM/AJB)

　　　　d.　Each United States petitioner and Chinese beneficiary listed below were married in Minnesota on the dates set forth below in furtherance of the conspiracy:

| U.S. Citizen Petitioner | Chinese Beneficiary | Date of Marriage |
|---|---|---|
| Kaneeka Chanthavong | Xiangquan Wang | November 15, 2005 |
| Chee Chengshua Lee | Jing Zhao | July 23, 2007 |
| David Ku Vang | Xiu Chen | August 29, 2007 |
| Kao Vang | Xiao Lu | December 19, 2006 |
| Houa Vang | Fen Yang | April 17, 2006 |
| Pao Vang | Meixia Chen | October 3, 2005 |
| Soua Vang | Jinlan Liu | November 13, 2006 |
| Annie Pafoua Xiong | Caimin Li | June 6, 2007 |
| Tou Kao Xiong | Yulu Chen | October 24, 2006 |
| Toua Xiong | Xiuying Chen | April 16, 2007 |
| Cheng Yang | Mei Huang | December 20, 2006 |
| Chue Yang | Yanjin Liu | July 24, 2007 |
| Thomas Yang | Huizhu Huang | June 15, 2007 |
| Tou Kao Yang | Meiyun Liu | June 7, 2007 |
| Lyfoung Yang | Jianyun Lin | July 23, 2007 |

　　15.　All in violation of Title 18, United States Code, Section 371.

## COUNTS 2 - 16
(Aiding and Abetting Marriage Fraud)

　　16.　The Grand Jury realleges and incorporates paragraphs 1-9 as if set forth in full herein.

U.S. v. Xiangquan Wang, et al.             Criminal No. 08-118 (PAM/AJB)

17. On or about the dates set forth below, in the State and District of Minnesota, defendants as set forth below, aiding and abetting each other, did knowingly enter into a marriage for the purpose of evading any provision of the immigration laws of the United States:

| Count | U.S. Citizen Petitioner | Chinese Beneficiary-Defendant | Date of Marriage |
|---|---|---|---|
| 2 | Kaneeka Chanthavong | Xiangquan Wang | November 15, 2005 |
| 3 | Chee Chengshua Lee | Jing Zhao | July 23, 2007 |
| 4 | David Ku Vang | Xiu Chen | August 29, 2007 |
| 5 | Kao Vang | Xiao Lu | December 19, 2006 |
| 6 | Houa Vang | Fen Yang | April 17, 2006 |
| 7 | Pao Vang | Meixia Chen | October 3, 2005 |
| 8 | Soua Vang | Jinlan Liu | November 13, 2006 |
| 9 | Annie Pafoua Xiong | Caimin Li | June 6, 2007 |
| 10 | Tou Kao Xiong | Yulu Chen | October 24, 2006 |
| 11 | Toua Xiong | Xiuying Chen | April 16, 2007 |
| 12 | Cheng Yang | Mei Huang | December 20, 2006 |
| 13 | Chue Yang | Yanjin Liu | July 24, 2007 |
| 14 | Thomas Yang | Huizhu Huang | June 15, 2007 |
| 15 | Tou Kao Yang | Meiyun Liu | June 7, 2007 |
| 16 | Lyfoung Yang | Jianyun Lin | July 23, 2007 |

18. All in violation of Title 8, United States Code, Section 1325(c) and Title 18, United States Code, Section 2.

12

U.S. v. Xiangquan Wang, et al.                    Criminal No. 08-118 (PAM/AJB)

### COUNTS 17-18
(Aiding and Abetting Visa Fraud)

19. The Grand Jury realleges and incorporates paragraphs 1-9 as if set forth in full herein.

20. Beginning on or about the dates set forth below and continuing to the present, in the State and District of Minnesota and elsewhere, the defendants as set forth below, aiding and abetting each other, did knowingly use, possess, obtain, accept and receive a nonimmigrant visa, namely a K-1 visa, knowing it to have been procured by means of any false claim and statement, and to have otherwise procured by fraud and unlawfully obtained, as set forth below:

| Count | U.S. Citizen Petitioner | Chinese Beneficiary-Defendant | Date of Issuance of K-1 Visa |
|---|---|---|---|
| 17 | Chue Dou Vang | Ying Chen | June 3, 2006 |
| 18 | Joe Yang | Ling Huang | July 7, 2007 |

21. All in violation of Title 18, United States Code, Sections 1546(a) and 2.

### COUNT 19
(Concealment of Material Fact)

22. From in or about December 2006 through in or about November 2009, in the State and District of Minnesota and elsewhere, in a matter within the jurisdiction of the Executive Branch of the Government of the United States, namely, the Citizenship and Immigration Service of the United States, the

13